In the Matter of the Petition of HONORA SULLIVAN to Prove the
Last Will and Testament of JAMES F. MORRIS, Late of the
County of Kings, Deceased.

Surrogate's Court, Kings County, May, 1923.

**Wills — execution — condition showing decedent's incapacity to make
a will.**

Decedent on a Friday was stricken with paralysis which affected his throat and
one side of his body. He was removed that night to the hospital where he
died the following Monday. A writing in pencil across the hospital chart of
the decedent in the handwriting of his sister giving names, amounts and
addresses and below a pencil scrawl said to have been written by decedent and
which was undecipherable by the surrogate was propounded as decedent's will.
*Held*, that it appearing from the testimony of the doctor who attended decedent
that when the writing was made on Sunday afternoon the throat of decedent was
so filled with mucous that he, the doctor, could not understand what decedent
said and that decedent had secondary pneumonia and was in a stuporous con-
dition on that day, probate will be denied.

PROCEEDING to probate will.

*Rose & Paskus*, for petitioner.

*Charles E. Le Barbier*, for Bessie F. Scully, contestant.

WINGATE, S. The paper propounded as a will consists of a
hospital chart with the decedent's record of temperature, pulse
and respiration from his entry into the hospital until it was used
to write upon as hereinafter described. Across the top of the
paper are written, in pencil, names, amounts and addresses, in
the handwriting of decedent's sister, and below is a pencil scrawl
said to be written by the deceased, which is undecipherable by the
surrogate.

Decedent was stricken on Friday with paralysis, which affected
his throat and one side of his body, and was removed that night
to the hospital, where, later, secondary pneumonia set in. He
died the following Monday, December 4, 1922.

On Sunday afternoon, his sister testifies, she called, and taking
the hospital chart wrote upon it at the dictation of the decedent
the names, amounts and addresses mentioned, gave the decedent
the pencil and supervised his efforts at writing that which is now
offered at his will. She says she could understand what he said,
and that she wrote down the names, amounts and addresses as
he told her, and that when that was finished, he wrote out the
alleged will.

Her interpretation of his writing was that it left all his property
to her and to her sister. She further testifies that the decedent

said, " Sign this will," to her and to Mrs. Steiner (Morris) and the nurse, who were also in the room, and that they signed.

Mrs. Steiner (Morris), who claims to be decedent's wife and who would get nothing if the will were admitted to probate, testifies that she saw the occurrence and saw the pencil drop out of decedent's hand, but says that the sister asked her and the nurse to sign the paper, saying it was a list of those who owed the decedent money, and she is very positive the word " will " was never mentioned. She further says that the man's throat was in such condition that he could not make a sound she could understand.

The nurse, who is a disinterested party, corroborates the testimony of Mrs. Steiner (Morris) and is positive that the word " will " was not used, and says that she could not understand the sounds the decedent made.

The doctor who attended the decedent testifies that on the Sunday when the writing propounded as a will was done, the deceased had partial paralysis of one leg and arm and partial paralysis of his throat, which was so filled with mucous that he (the doctor) could not understand what the decedent said. He further testifies that the decedent had secondary pneumonia and that, because of his inability to understand what the patient said, he could not determine whether he was rational or delirious. He described the patient as having been in a stuporous condition on the day in question.

The petitioner has failed to sustain the burden of proof as to execution and testamentary capacity, and the will is denied probate.

Decreed accordingly.